COMMONWEALTH of Pennsylvania, Appellee,

v.

**Judith Claire McCLOSKEY, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 2003.

Filed Oct. 31, 2003.

Gary N. Asteak, Easton, for appellant.

John M. Morganelli, Asst. Dist. Atty., Easton, for Com., appellee.

Before: DEL SOLE, P.J., JOHNSON and BECK, JJ.

BECK, J.

¶ 1 Judith Claire McCloskey was convicted of three counts of involuntary manslaughter after dozens of teenagers attended a beer party in her home and three of them died in an automobile accident after leaving the party. Among other issues, we consider the evidentiary burden of establishing recklessness and causation in connection with involuntary manslaughter. We also discuss the relevance of prior bad acts evidence in this context. After a thorough review of the facts and law, we affirm McCloskey's judgment of sentence.

**FACTS**

¶ 2 On April 28, 2001, one of McCloskey's daughters, 17–year–old Kristen, hosted a party in the basement of McCloskey's home. McCloskey's other daughter, 14–year–old Kelly, also invited guests to her home that night. The Commonwealth presented over two dozen teenagers, all of whom were present at the party, to testify about the events. Their testimony, in its entirety, established the following.

¶ 3 Two 18–year–old boys, with the help of a 56–year–old man, brought two kegs of beer to McCloskey's home. Kristen charged party guests $5.00, for which each guest received a plastic cup to use for beer. As the evening progressed, there were in excess of 40 people at the party,

all of them under age 21. As many as 20 cars were parked around the house. The teenagers drank beer and played drinking games throughout the evening, from approximately 8:00 pm until 11:00 pm. Several party guests observed 19-year-old Christopher Mowad drinking heavily and exhibiting signs of intoxication.

¶ 4 McCloskey knew that a party was planned and, according to witnesses, assisted in getting ice and blankets ready for the kegs.[1] McCloskey was at home for the entire party, but she stayed upstairs and did not venture into the basement, except to open the door on one or more occasions to tell the teens to turn down the music.[2] Throughout the evening, several teens made their way upstairs to the first floor where McCloskey watched television and drank beer with her boyfriend. Party guests moved in and out of the kitchen, Kelly's bedroom and the bathroom, all of which were on the first floor. Some guests arrived at the party and left again through the front door, passing McCloskey on their way and, at times, speaking to her. More than one teenager testified that they chatted with McCloskey while they (the teens) were drinking beer.

¶ 5 A large number of teenage witnesses testified that they not only attended the April 28th drinking party, but also drank alcohol at McCloskey's home on prior occasions. They told the jury that they did not hide this fact from McCloskey, but instead drank in her presence, and were never reprimanded by her or prevented from doing so. The testimony, on the whole, established that McCloskey's home was a place where the teenagers regularly drank alcohol without fear of repercussion.

¶ 6 At some point in the evening, Kimberly Byrne (18 years old) and cousins Courtney Kiefer (17 years old) and Bryan Kiefer (18 years old) left the party and went to a nearby field. About twenty minutes later, a neighbor contacted police because she was concerned about the number of people and cars on the rural road near McCloskey's home. Courtney Kiefer called Mowad, who was still at the party. Mowad informed her that the police had arrived and he was leaving. He ran out of McCloskey's home, avoided the police and drove his Isuzu Rodeo to the field. There, he picked up the three teens and drove back toward McCloskey's residence to see what happened.

¶ 7 The foursome rode past McCloskey's house, observed police there and talked about how lucky they were not to have been caught. But later, while driving around, Mowad sideswiped another vehicle and, in an effort to elude the driver, sped away. He lost control of the car and drove off the road. The vehicle flipped over several times before coming to rest on its roof. All four teenagers were ejected. Mowad, Byrne and Bryan Kiefer died as a result of blunt force trauma to their heads, necks and chests. Courtney Kiefer, the only survivor, sustained multiple serious injuries, including head trauma, and required extended hospitalization. Mowad's blood alcohol content was .20%.

¶ 8 Meanwhile, Plainfield Police Officer Vincent A. Tomaro had responded to the call at McCloskey's house and observed people leaving from the rear of the home. Officer Tomaro entered the home with McCloskey's permission and proceeded to the basement where he discovered, and confiscated, the kegs of beer. McCloskey

---

1. McCloskey testified at trial that she thought the party was just a get-together to discuss the upcoming prom.

2. Witnesses also testified that McCloskey called down to the basement to request assistance in finding her "bowl," i.e., marijuana pipe.

told Officer Tomaro that she was unaware of the beer. The officer requested back-up assistance and began to interview McCloskey's daughter and other teenagers at the scene.

¶ 9 Party guests who were 18 years old or older were permitted to leave the premises if their preliminary breath tests registered negative. Police contacted the parents of teens under the age of 18. Those parents either came to retrieve the teens or permitted them to stay at McCloskey's house.

¶ 10 Later that morning, some teenagers still at McCloskey's home, and another who reappeared there, observed McCloskey when she received the news of the fatal crash. In response to learning that the teens were dead, McCloskey stated: "I'm f* * *ed."

¶ 11 Ultimately, McCloskey faced trial for three counts of involuntary manslaughter and the jury convicted her of the charges. She was sentenced to three consecutive terms of four (4) to eighteen (18) months in prison, for an aggregate term of one to four and one-half years. This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

██ ¶ 12 In her first claim, McCloskey asserts that the verdict is contrary to law because the Commonwealth failed to establish the requisite mental state or prove causation. This claim is a challenge to the sufficiency of the evidence, the standard for which is clear:

> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Drumheller,* 570 Pa. 117, 141, 808 A.2d 893, 907–08 (2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003).

██ ¶ 13 Involuntary manslaughter is defined as follows:

> A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a).

¶ 14 Thus, involuntary manslaughter requires 1) a mental state of either recklessness or gross negligence and 2) a causal nexus between the conduct of the accused and the death of the victim. McCloskey insists that both elements are lacking in this case.

**MENTAL STATE**

¶ 15 Recklessness is statutorily defined as "consciously disregard[ing] a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S.A. § 302(b)(3).

██ ¶ 16 McCloskey argues that "the Commonwealth established only that [she] was present in her upstairs living room, while a party took place in the basement of the residence." Appellant's Brief at 14. But McCloskey focuses only on her defense and not the entire record. For instance, McCloskey ignores the testimony of several key witnesses, including those who told the jury that McCloskey helped prepare the ice and blankets for the kegs

and later chatted with teens during the party *while they were drinking alcohol.*

¶17 The law prohibits anyone from knowingly furnishing liquor, malt or brewed beverages to persons less than 21 years of age. 18 Pa.C.S.A. § 6310.1(a). "Furnishing" alcohol includes "allow[ing] a minor to possess ... [alcohol] on property owned or controlled by the person charged." 18 Pa.C.S.A. § 6310.6 Thus the law is clear that McCloskey was prohibited from allowing her daughter's party guests, all of whom were minors, to possess alcohol in her home.

■ ¶18 Although McCloskey denied that she knew anything about the kegs of beer, the jury was free to disbelieve her testimony. Credibility is at the sole discretion of the fact-finder, who is entitled to believe all, part or none of the evidence presented. *Commonwealth v. Moore,* 436 Pa.Super. 495, 648 A.2d 331, 334 (1994), *appeal denied,* 540 Pa. 580, 655 A.2d 512 (1995).

■ ¶19 We are certain that a parent who knows alcohol is being served to minors in her home is acting recklessly when she allows the conduct to continue. That knowledge not only constitutes a "gross deviation from the standard of conduct that a reasonable person would observe in [her] situation," 18 Pa.C.S.A. § 302(b)(3), it also constitutes a clear violation of the law. 18 Pa.C.S.A. § 6310.1(a). McCloskey's assertion, that she cannot be deemed reckless if she was unaware of the alcohol, may be correct. However, that assertion matters not in this case where there was ample evidence in the record to establish that McCloskey *knew* about the alcohol at the party.

¶20 This is not a case of an unwitting parent who was tricked into hosting a party at which alcohol was served without her knowledge. Instead, the evidence, when viewed as it must be in the light most favorable to the Commonwealth as verdict winner, established that McCloskey *knew* alcohol was being served in her basement and the minors were drinking it. She interacted with teens as they drank and allowed the party to continue for hours into the night, interrupted only by the arrival of police. As a result, her recklessness was established.[3]

## CAUSATION

■ ¶21 McCloskey next claims that the Commonwealth failed to prove causation. She argues that Mowad's voluntary act of drinking to excess, his decision to drive, the fact that he was speeding when he lost control of his vehicle and all of the occupants' choices to refrain from wearing seatbelts were their own "tragic decisions," causing their deaths.

■ ¶22 "Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death." *Commonwealth v. Nicotra,* 425 Pa.Super. 600, 625 A.2d 1259, 1260 (1993) (citations omitted). This is true even though "other factors combined with that conduct to achieve the result." *Id.* McCloskey aptly sets out in her brief the relevant standard for determining this element of the crime:

In order to impose criminal liability, causation must be direct and substantial. Defendants should not be exposed to a loss of liberty based on the tort standard which only provides that the event giving rise to the injury is a substantial factor. Although typically the tort con-

---

**3.** McCloskey also argues that the Commonwealth failed to prove gross negligence. Because we have determined that the evidence established recklessness, we need not discuss this lesser state of mind.

text refers only to substantial and not to direct and substantial as in the criminal context, the additional language in the criminal law does not provide much guidance. Therefore, criminal causation has come to involve a case-by-case social determination; *i.e., is it just or fair under the facts of the case to expose the defendant to criminal sanctions. In other words, was the defendant's conduct so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability or was the actual result so remote and attenuated that it would be unfair to hold the defendant responsible for it?*

*Commonwealth v. Rementer,* 410 Pa.Super. 9, 598 A.2d 1300, 1304–05 (1991) (emphasis supplied), *appeal denied,* 533 Pa. 599, 617 A.2d 1273 (1992).

¶ 23 In seeking to define the requirement that a criminal defendant's conduct be a direct factor in the death of another, the courts of this Commonwealth have held that "so long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found." *Nicotra, supra,* 625 A.2d at 1264 (collecting cases). A victim's contributory negligence is not a defense to a criminal charge. *Id.*

¶ 24 Our review of the facts in this case leads us to conclude that McCloskey's "furnishing" of alcohol to minors, including Mowad, "started the chain of causation" that led to the death of three teens. The record supports the finding that McCloskey knew the party guests, all of whom were under age 21 and some of whom were as young as 14, were drinking beer in her home. She allowed them to do so for several hours without interruption, supervision or comment. The teens came and went throughout the evening in their cars, nearly twenty of which were parked on McCloskey's property at some point.

¶ 25 That teenagers, alcohol and automobiles can be and often is a fatal combination is not a novel concept. Strict and detailed laws reflect the legislature's recognition of this fact. Our complex statutory framework restricts the age at which one may obtain a driver's license, 75 Pa. C.S.A. § 1503, prohibits teens from drinking alcohol, 18 Pa.C.S.A. § 6308, prohibits others from furnishing alcohol to those under age 21, 18 Pa.C.S.A. § 6310.1, and, in the event a teenager is convicted of underage drinking, calls for suspension of his driver's license.[4] 18 Pa.C.S.A. § 6310.4.

¶ 26 We conclude that the occurrence of a fatal automobile accident following a teenager's unlimited consumption of alcohol at a wholly unsupervised teenage beer party is neither "remote" nor "attenuated." Further, we are convinced that it is not "unfair" or "unjust" to hold McCloskey responsible under these facts, despite the existence of other factors that combined with McCloskey's conduct to achieve the tragic result here. We reiterate, this is not a case where McCloskey simply failed to supervise a teen party in her home at which beer was secretly being served. McCloskey "furnished" the alcohol to the minors under the plain language of the statute. The tragic and all too familiar outcome of her conduct warrants the criminal responsibility imposed.

¶ 27 Contrary to her assertions, McCloskey was not prosecuted for involuntary

---

**4.** The law provides that in the event a minor is not yet licensed to drive at the time he is convicted of violating any of the provisions relating to underage drinking, he is subject to suspension of his operating privileges at the time he seeks a learner's permit or, if under age 16, is subject to suspension upon his 16th birthday. 18 Pa.C.S.A. § 6310.4(c).

manslaughter based on an incident caused by "adolescent foolhardiness." Appellant's Brief at 21. Rather, she was brought to trial because she "started the chain of causation" that led to the death of three teens. *Nicotra, supra.* Her outrageous conduct, in knowing the teens were consuming alcohol, interacting with them as they drank and allowing the illegal and unsupervised behavior to continue into the night, is the source of her culpability.[5]

## WEIGHT OF THE EVIDENCE

¶ 28 McCloskey also asserts that the guilty verdicts were against the weight of the evidence presented at trial. She does not develop her weight claim beyond stating it in the questions presented. Assuming she has adequately presented the claim for appellate review, we nonetheless find it without merit.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Johnson,* 542 Pa. 384, 394, 668 A.2d 97, 101 (1995), *cert. denied,* 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996). An appellate court cannot substitute its judgment for that of the finder of fact. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Hawkins,* 549 Pa. 352, 368, 701 A.2d 492, 500 (1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). *Commonwealth v. Small,* 559 Pa. 423, 741 A.2d 666, 672–73

(1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Tharp,* [—— Pa. ——, ]830 A.2d 519 (Pa.2003), (citations omitted).

*Commonwealth v. Champney,* —— Pa. ——, 832 A.2d 403, 408 (2003).

¶ 29 The trial court concluded that the "evidence proffered by the Commonwealth was overwhelming and the jury's finding was supported by the factual record." Trial Court Opinion, 1/13/03, at 14. Upon review, we find that McCloskey's weight claim fails.

## EVIDENCE OF PRIOR BAD ACTS

¶ 30 McCloskey next raises a series of challenges to evidentiary rulings made by the court during trial. "The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion." *Commonwealth v. Robinson,* 554 Pa. 293, 304, 721 A.2d 344, 350 (1998), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000).

¶ 31 McCloskey insists first that the trial court erred in permitting evidence of her prior bad acts, specifically, testimony by numerous teens that they drank alcohol at McCloskey's home and in her presence on a regular basis. The Pennsylvania Rules of Evidence govern the admis-

---

5. Our assessment of these facts in no manner condones or approves of parents who host teen alcohol parties and purport to "supervise" or "control" these events, by limiting alcohol intake, confiscating car keys or encouraging teens to stay at the premises overnight. The facts before us concern a mother who was aware of the alcohol in her home, the teenagers' consumption of it and the teens' use of motor vehicles. That she exercised no supervision under these circumstances merely increases the level of recklessness she exhibited; it is not the sole factor that constitutes recklessness.

sion of prior bad acts evidence. The relevant rule provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(1) and (2). Admission is proper only if the probative value of the evidence outweighs its potential for prejudice. Pa. R.E. 404(b)(3).

¶ 32 McCloskey faced charges of involuntary manslaughter based on the fact that she hosted a party knowing that the teenage guests were drinking alcohol in her home. McCloskey claimed she had no knowledge that alcohol would be or was present at the party and, further, had no reason to know. The challenged testimony, however, established that these same teens regularly met at McCloskey's home to drink alcohol and that McCloskey was present at these times and aware of the teens' conduct. Thus, the evidence was offered to show McCloskey's knowledge that her residence routinely was used by the minors as a place to drink alcohol. While McCloskey denied that the teens' testimony was true, the evidence nonetheless was probative of her awareness or knowledge of the unlawful behavior and, as a result, was relevant to establish that she acted recklessly.

¶ 33 The trial court recognized the prejudicial nature of this evidence and assessed its probative value against its prejudicial effect. In light of McCloskey's claims that she did not know and had no reason to know that the teen guests were drinking alcohol, we find no abuse of discretion in the admission of the testimony.

## EVIDENCE OF TEENS OTHER THAN MOWAD DRINKING ALCOHOL

¶ 34 McCloskey next argues that the testimony regarding teens other than

Mowad drinking on the night of the party was inadmissible because it was "irrelevant and unduly prejudicial." We cannot agree. Again, this evidence was offered to establish McCloskey's recklessness. The theory of the Commonwealth's case was that a raucous and unsupervised beer party took place in McCloskey's home with her full knowledge. Thus, she committed an unlawful act ("furnishing" alcohol to minors) in a reckless manner, the basis for the involuntary manslaughter convictions. The evidence, although prejudicial, was highly probative of McCloskey's mental state, making it relevant and admissible at trial. The trial court did not abuse its discretion in admitting the evidence.

## EXPERT TESTIMONY

¶ 35 McCloskey's final evidentiary claim concerns the testimony of the Commonwealth's accident reconstruction expert, Corporal Kathy Jo Winterbottom of the Pennsylvania State Police. Corporal Winterbottom testified that in her opinion, Mowad's .20% blood alcohol level made him incapable of safe driving and, along with the high rate of speed at which he was traveling, was the cause of the fatal accident. McCloskey argues that Winterbottom should not have been permitted to comment on Mowad's ability to drive with the elevated blood alcohol level because she did not see him operate the vehicle and she is not a medical expert. McCloskey claims that Winterbottom testified beyond the scope of her expertise.

¶ 36 Expert testimony is proper when it is offered by a witness with any "reasonable pretension to special knowledge on the subject under investigation." *Commonwealth v. Stallworth*, 566 Pa. 349, 369, 781 A.2d 110, 121 (2001). We may reverse the trial court's order permitting

expert testimony only if we find an abuse of discretion. *Id.* The trial court here found that Winterbottom was an "expert in the field of accident reconstruction ... with professional training that included study regarding the effects of alcohol on the body and investigations of alcohol-related accidents." Trial Court Opinion, 1/13/03, at 7. The record supports these findings. Based on Winterbottom's testimony outlining her research and analysis of the facts in this case, the court concluded:

> In this case, the accident reconstructionist thoroughly examined the scene and testified as to her findings. Further, she had information regarding the circumstances leading up to the accident, as provided by the surviving witness, Courtney Kiefer. Also factoring into her analysis was the BAC level of the driver at the time of the accident (.20%), which was provided in the police coroner's report. The expert was able to eliminate mechanical causes to the accident and roadway hazards. Corporal Winterbottom opined that there was no apparent reason for the driver, who was speeding on a relatively straight highway, to lose control of his vehicle and crash, other than the fact that he was 19 years of age and under the influence of alcohol. . . . This Court found that the expert witness was qualified to testify as an expert in the field of both accident reconstruction and the affects [sic] of alcohol as it related to the impairment of a person operating a motor vehicle and, further, that the expert witness was able to cogently recall the factual record in support of her opinion.

Trial Court Opinion, 1/1/3/03, at 8.

¶ 37 We find no error in the trial court's admission of Winterbottom's testimony.

In light of the Corporal's training and experience, we agree that she was sufficiently knowledgeable to comment on the circumstances of the accident and its underlying causes. Her assessments with regard to Mowad's alcohol consumption were reasonable in light of her expertise. The fact that she is not a medical expert and did not observe Mowad driving did not prevent her from considering Mowad's blood alcohol level (which was stipulated by the parties and registered twice the legal limit for an adult) when forming her opinion on the cause of the accident. McCloskey is not entitled to relief on this claim.

## JUROR MISCONDUCT

■■■ ¶ 38 McCloskey next argues that the trial court erred when it refused to grant her a mistrial based on juror misconduct.[6] During trial, defense counsel brought to the court's attention the observation of public defender investigator James Coonrod. Coonrod told the court that he overheard a juror tell someone else "You should have seen her face when [the prosecutor] asked some specific question." Trial Transcript, 9/13/02, at 7.

¶ 39 The court questioned the juror, who denied that he had discussed the case with anyone else or formed an opinion about the case in advance of the court's charge to the jury. The trial court made a specific finding that the juror was credible. In addition, the court noted in its opinion that it found Coonrod's testimony "unspecific," "indefinite" and not credible. Trial Court Opinion, 1/13/02, at 16. Even if assumed credible, reasoned the court, Coonrod's testimony "failed to establish bias, prejudice or prejudgment by the juror in question." *Id.* The court determined that neither a mistrial nor the removal of the juror was warranted under the facts.

---

6. In the alternative, McCloskey requested removal of the juror. The court also denied this request.

¶ 40 In light of the entire record, including the manner in which the matter was investigated by the court and the fact the court had the opportunity to observe the juror and the investigator personally, we find no error in the court's ruling.

## JURY INSTRUCTIONS

¶ 41 McCloskey's final claims concern the trial judge's charge to the jury. McCloskey challenges two instructions, characterizing them as failing to reflect the law in an accurate manner. The Commonwealth insists that both charges were proper and one of them was even more favorable to McCloskey than she requested. We need not analyze either claim as the jury instruction issues simply were not preserved for review. *Commonwealth v. Gooding,* 818 A.2d 546, 552 (Pa.Super.2003).

¶ 42 The record reflects that McCloskey did not object to the instructions at the time they were made and, further, did not mention the alleged errors at the close of the jury charge when the court specifically asked both parties if they were satisfied. In order to preserve a challenge to a jury instruction, McCloskey was required to make a timely and specific objection. *Gooding, supra.* Her failure to do so results in waiver. *Id.*

## CONCLUSION

¶ 43 Because McCloskey has raised no meritorious issues on appeal, we are compelled to deny relief. We conclude that the specific facts of this case establish the requisite state of mind for involuntary manslaughter (recklessness) and the proof of causation required to sustain the verdicts.

¶ 44 Judgment of sentence affirmed.