# Commonwealth v. Hines

390

*John T. Adams, district attorney,* for Commonwealth.
*Michael D. Dautrich,* for appellant.

BUCCI, *J.,* April 22, 2008—

## PROCEDURAL HISTORY

The appellant, Craig Ryan Hines, was charged with criminal homicide,[1] murder of the first degree,[2] murder of the third degree,[3] aggravated assault,[4] persons not to possess, use, manufacture, control, sell or transfer fire-

---

1. 18 Pa.C.S. §2501(a). Withdrawn by the Commonwealth.
2. 18 Pa.C.S. §2502(a).
3. 18 Pa.C.S. §2502(c).
4. Two counts. 18 Pa. C.S. §§2702(a)(1), (a)(4).

arms,[5] firearms not to be carried without a license,[6] possessing instrument of crime,[7] recklessly endangering another person,[8] conspiracy to commit criminal homicide,[9] conspiracy to commit murder of the first degree,[10] conspiracy to commit murder of the third degree,[11] conspiracy to commit aggravated assault,[12] and conspiracy to commit recklessly endangering another person.[13] The charges arose out of a shooting that occurred near midnight on July 1, 2000 at the intersection of Schuylkill and Buttonwood Streets, in the City of Reading, Berks County, and which resulted in the death of Lowell Nicholas.

Appellant's case was consolidated with that of co-defendants Jesus Adames, Carlos Holguin, and Christopher Ferreil. The jury found each of the four co-defendants guilty of two counts of aggravated assault,[14] one count of firearms not to be carried without a license,[15] one count of possession of instruments of crime,[16] and two counts of recklessly endangering another person.[17] This court sentenced appellant to an aggregate sentence

5. 18 Pa.C.S. §6105. Severed prior to the commencement of trial and subsequently withdrawn by the Commonwealth.

6. 18 Pa.C.S. §6106(a).

7. 18 Pa.C.S. §907(b).

8. Two counts. 18 Pa.C.S. §2705.

9. 18 Pa.C.S. §903(a)(1)(2).

10. 18 Pa.C.S. §903(a)(1)(2).

11. 18 Pa.C.S. §903(a)(l)(2).

12. 18 Pa.C.S. §903(a)(1)(2).

13. 18 Pa.C.S. §903(a)(1)(2).

14. 18 Pa.C.S. §§2702(a)(1), (a)(4).

15. 18 Pa.C.S. §6106(a).

16. 18 Pa.C.S. §907(b).

17. 18 Pa.C.S. §2705.

of not less than 15 years nor more than 30 years incarceration in a state correctional facility.

Appellant, through his trial counsel, Kurt B. Geishauser, Esquire, filed a timely notice of appeal and a concise statement of matters complained of on appeal. However, Mr. Gieshauser failed to file a brief in the Superior Court on appellant's behalf and the appeal was dismissed on July 20, 2006.

On November 29, 2006, appellant filed a pro se PCRA petition. This court appointed Michael Dautrich, Esquire to represent appellant, and on December 26, 2007, he filed an amended PCRA petition requesting the reinstatement of appellant's right to direct appeal. On January 25, 2008, this court granted appellant leave to appeal his judgment of sentence nunc pro tunc. On February 21, 2008, appellant filed a notice of appeal to the Pennsylvania Superior Court. On March 5, 2008, this court ordered appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rules of Appellate Procedure §1925(b). Appellant filed his concise statement on March 24, 2008, raising 23 issues.[18]

## STATEMENT OF FACTS

At trial, the Commonwealth presented the testimony of five eyewitnesses who on July 1, 2000, saw a white van pull next to the passenger side of a vehicle driven by Felix Cruz with the victim, Lowell Nicholas, riding in the passenger seat. (Notes of testimony, 5/2/05-5/6/05,

---

18. Given the excessive number of issues raised by appellant in his concise statement, this court will not attempt to reproduce them.

at 498-587.) All five of the witnesses heard gunshots, two of them saw glass breaking between the two vehicles and one witness actually saw gunfire between the two cars. *Id.* One of the eyewitnesses, William Morales, was able to identify at trial the four occupants of the white van.

Later, the Commonwealth recovered spent .40 caliber bullet shells from the street and from the white Honda Accord station wagon in which Lowell Nicholas was a passenger. (NT, 5/12/05, at 889.) They also recovered a bullet fragment from the brain of the victim. (NT, 5/12/05, at 901.) At trial, the Commonwealth's expert testified that this evidence came from at least two different guns. (NT, 5/16/06, at 174-75.)

Ten days after the incident, on July 11, 2000, Jesse Vargas took a white Chevy Ventura van to Cindy Rowe Auto Glass Repair Shop to have the windshield and a driver's side window replaced, as well as to have the interior of the van cleaned. (NT, 5/2/05-5/6/05, at 694, 707.) Vargas came into Cindy Rowe's in the afternoon of July 11, 2000 and spoke to the manager about the work requested. Later that evening, after business hours, an unknown person delivered the van to Cindy Rowe's. (NT, 5/9/05-5/11/05, at 17-18.) In the course of repairing the van, an employee of Cindy Rowe's found a bullet slug at the base of the van's windshield and found a empty bullet shell casing on the floor behind the driver's seat. (NT, 5/2/05-5/6/05, at 695-96.) These items were later given to Criminal Investigator Cabrera.

Vargas (also known as Luis Jesse Martinez) testified at trial that he rented the van from Kulp Auto Rentals

and that he did so as a favor for a friend, defendant Carlos Holguin. (NT, 5/9/05-5/11/05, at 350-52.) He further testified that Holguin accompanied him to pick up the van, gave him money for the rental, and took possession of the van after exchanging cars with him. (NT, 5/9/05-5/11/05, at 352-53.) Vargas did not see the white van again until July 11, 2000, the day he contacted Cindy Rowe's Auto Glass to have the van windows replaced.

Commonwealth witness Angel Rivera testified that on July 1, 2000, the night Lowell Nicholas was shot, he was at Jesus Adames' house with the appellant and his three co-defendants, Carlos Holguin, Jesus Adames and Christopher Ferreil. Rivera testified that he left Adames' house with appellant and that appellant drove him to McKnight's Cafe in a white van. (NT, 5/9/05-5/11/05, at 45-48.) After stopping at McKnight's and picking up Joanny Arroyo, appellant drove Rivera and Arroyo to the Econolodge in Wyomissing. (NT, 5/9/05-5/11/05, at 48.) Arrangements were made for Rivera to call appellant when he was ready to be picked up from the Econolodge later that evening. However, no one answered the phone the first few times Rivera called. Finally, Christopher Ferreil answered the phone and told Angel Rivera that no one could pick him up. (NT, 5/9/05-5/11/05, at 49-51.)

Angel Rivera further testified that he was again at Adames' house the following day. Rivera testified that he heard appellant say that he was stopped at a red light on Buttonwood and that a Honda Accord pulled up next to them in the left-hand turning lane to turn onto Schuylkill Avenue. Appellant then looked over at the Honda Accord and began firing into the car. (NT, 5/9/05-

5/11/05, at 55.) Appellant also said he was hiding between the front and rear driver's side windows while he was firing and that he could feel the heat from a co-defendant's gun on his face. (NT, 5/9/05-5/11/05, at 56-57.)

Earlier that day, on July 1, 2000, while at Adames' house, Rivera saw appellant in possession of a .40 caliber Sig Sauer. (NT, 5/9/05-5/11/05, at 62.) Commonwealth witness William Morales testified that on July 1, 2000, he saw a white van pull up next to the passenger side of another white car at the corner of Schuylkill and Buttonwood which was in the left turning lane. (NT, 5/9/05-5/11/05, at 572-73.) The witness heard someone say, "What the fuck are you looking at?," saw both sliding doors of the van open, and then heard gunshots coming from the white van. (NT, 5/9/05-5/11/05, at 575.) When the van drove past him, the witness recognized all four defendants, Christopher Ferreil, Carlos Holguin, Craig Hines and Jesus Adames, as the occupants of the van.

## DISCUSSION

### I. *Jurisdiction*

Appellant first claims that this court did not have jurisdiction in this case "because the defendant was charged with numerous violations of the Pennsylvania Crimes Code (Purdon's title 18) rather than alleging violations of the true law of Pennsylvania, which is Pennsylvania Pamphlet Law."

There are "two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in

compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution." *Commonwealth v. Jones,* 593 Pa. 295, 304, 929 A.2d 205, 210 (2007).

"[T]he courts of common pleas have statewide jurisdiction in all cases arising under the *Crimes Code . . . .*" *Id.* (emphasis added) This court believes that such a statement by the highest court in this Commonwealth makes it clear that reference to the Crimes Code rather than Pamphlet Law is perfectly acceptable and this court was not deprived of jurisdiction in this matter "because the defendant was charged with numerous violations of the Pennsylvania Crimes Code (Purdon's title 18) rather than alleging violations of the true law of Pennsylvania, which is Pennsylvania Pamphlet Law."

Furthermore, as long as a defendant receives formal notice, even the lack of a proper criminal indictment will not deprive the trial court of subject matter jurisdiction. *Id.* Therefore, even if appellant is correct that there is something inappropriate about referring to the Crimes Code, the defendant still received clear notice of the charges against him. Accordingly, appellant's first issue is devoid of merit.

## II. *Rule 600 Violation*

Appellant next claims that this court erred in failing to dismiss the case against appellant due to a violation of Rule 600 of the Pennsylvania Rules of Criminal Procedure.

It appears that appellant's trial counsel raised this issue several days into the jury selection process at the request

of his client, but also stated that he had investigated the issue and found it to be meritless. NT, 5/2/05-5/6/05, at 267. Under these circumstances, this court did not err in refusing to grant the motion.

### III. *Judge Keller's Grant of a Mistrial*

Thirdly, appellant alleges that the Honorable Judge Scott Keller erred by granting a mistrial in the first trial of this case.

The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. *Commonwealth v. Sanchez,* 589 Pa. 43, 66, 907 A.2d 477, 491 (2006). The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice. *Id.* "Whether to grant the extreme remedy of a mistrial is a matter falling into the discretion of the trial court. 'A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.'" *Commonwealth v. Boczkowski,* 577 Pa. 421, 454, 846 A.2d 75, 94 (2004). "Further, the grant of a mistrial is unnecessary where a cautionary instruction is adequate to overcome any possible prejudice." *Commonwealth v. Johnson,* 846 A.2d 161, 166 (Pa. Super. 2004). "Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." *Commonwealth v. Bracey,* 831 A.2d 678, 682 (Pa. Super. 2003).

Here, according to an order dated May 12, 2004, Judge Keller granted a mistrial upon the "motions of defendants, unopposed by the Commonwealth." Unfortunately, because the relevant proceedings were never transcribed, this court has no idea what occurred during the first trial that made it necessary to declare a mistrial. This court notes that it is appellant's responsibility to timely order those transcripts necessary for meaningful appellate review. *Commonwealth v. Steward*, 775 A.2d 819, 833 (Pa. Super. 2001); Pa.R.A.P. 1911. However, as it appears that the mistrial was requested by the defendants, presumably including appellant, appellant should not now be allowed to claim that Judge Keller erred by granting him the relief he requested.

Furthermore, the grant of a mistrial did not violate appellant's constitutional protections against double jeopardy since "[a] defendant's motion for a mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.'" *Commonwealth v. Simone*, 712 A.2d 770, 774 (Pa. Super. 1998).

Nor does this court find any merit to appellant's vague and undeveloped claims that the mistrial violated his right to due process or to "a trial of his choice."

Lastly, appellant's claim that his trial counsel was ineffective for failing to object to or challenge the grant of a mistrial is not properly before this court since "[a]s a general rule a [defendant/]petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 572 Pa. 48, 67, 813 A.2d 726, 738 (2002).

## VI. *Right to Counsel*

Appellant also claims that this court denied him his constitutional right to counsel of his choice by denying him a continuance to hire a different attorney.

Granting or denying a motion for continuance is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. McAleer,* 561 Pa. 129, 135, 748 A.2d 670, 673 (2000). Furthermore, "the constitutional right to counsel of one's own choice is not absolute. Rather, 'the right of the accused to choose his own counsel . . . must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice.'" *Commonwealth v. Randolph,* 582 Pa. 576, 584, 873 A.2d 1277, 1282 (2005).

Here, appellant asked for a continuance on the morning of the first day of trial in order to obtain private counsel. This request was made during a discussion on the motions for severance raised by counsel for all four co-defendants. (NT, 5/2/05-5/6/05, at 11.) Private counsel was not present, nor had he entered his appearance for appellant. In preparation for the trial, which involved three additional defendants besides appellant, the Commonwealth had already subpoenaed numerous witnesses and summoned approximately 150 jurors. Granting a continuance would have caused incredible expense to the Commonwealth, as well as considerable inconvenience to the witnesses and potential jurors. As appellant had more than ample time between his arrest and the commencement of trial to retain counsel of his choosing,

his request for a continuance was untimely and this court did not err in refusing to grant it.

## IV. *Discovery Violation*

Appellant next alleges that the Commonwealth failed to timely turn over the statement of a "Yahira Mendez."

This court believes that appellant may be referring to a Yaritza Mendez listed on the Commonwealth's amended witness list filed on January 7, 2005; however, this court was unable to find where appellant raised this issue among the thousands of pages of records. Ms. Mendez was never called as a witness by either party nor does it appear she was even mentioned by any of the witnesses that did testify. Absent additional information, this court is unable to address this issue.

## V. *Questioning of Allan Mapp*

Appellant next claims that the assistant district attorney erred in questioning Commonwealth witness Allan Mapp regarding whether he agreed to take a lie detector test.

The standard of review for a claim of prosecutorial misconduct is limited to "whether the trial court abused its discretion." *Commonwealth v. DeJesus,* 567 Pa. 415, 438, 787 A.2d 394, 407 (2001), *cert. denied,* 37 U.S. 1028 (2002).

"Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward [appel-

lant] so that they could not weight the evidence objectively and render a true verdict. Prosecutorial misconduct, however, will not be found where comments were based on evidence or proper inferences therefrom, or were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made. Finally, when a trial court finds that a prosecutor's comments were inappropriate, they may be appropriately cured by a cautionary instruction to the jury." *Id.* at 407-408.

This court acknowledges that the ADA was mistaken in believing that she could question Mr. Mapp about whether or not he took a polygraph exam; however, this court does not believe that this question so prejudiced the jury that they were unable to render a fair verdict.

Furthermore, this court instructed the jury to disregard any reference to the polygraph test. (NT, 5/17/05, at pp. 310-11.) "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Spotz,* 587 Pa. 1, 57, 896 A.2d 1191, 1224 (2006) (citing *Commonwealth v. Brown,* 567 Pa. 272, 289, 786 A.2d 961, 971 (2001) (*Brown II*)). See also, *Commonwealth v. O'Hannon,* 557 Pa. 256, 262, 732 A.2d 1193, 1196 (1999) ("Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions."). Consequently, this court considered the curative instruction a sufficient remedy for the Commonwealth's error.

Appellant also alleges that this court should have granted a mistrial after the defense objected to the Commonwealth's questioning of Mr. Mapp.

As this court discussed, *supra,* the denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. *Commonwealth v. Sanchez,* 589 Pa. 43, 66, 907 A.2d 477, 491 (2006). The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice. *Id.* "Whether to grant the extreme remedy of a mistrial is a matter falling into the discretion of the trial court. 'A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.'" *Commonwealth v. Boczkowski,* 577 Pa. 421, 454, 846 A.2d 75, 94 (2004). "Further, the grant of a mistrial is unnecessary where a cautionary instruction is adequate to overcome any possible prejudice." *Commonwealth v. Johnson,* 846 A.2d 161, 166 (Pa. Super. 2004). "Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." *Commonwealth v. Bracey,* 831 A.2d 678, 682 (Pa. Super. 2003).

As this court discussed above, the question at issue did not so prejudice the jury that they were unable to render a fair verdict.

Furthermore, this court instructed the jury to disregard any reference to the polygraph test. (N.T., 5/17/05, at 310-11.) "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Spotz,* 587 Pa. 1, 57, 896 A.2d 1191, 1224 (2006) (citing *Commonwealth v. Brown,* 567 Pa. 272, 289, 786 A.2d 961, 971 (2001) (*Brown II*)). See also, *Commonwealth v.*

*O'Hannon,* 557 Pa. 256, 262, 732 A.2d 1193, 1196 (1999) ("Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions."). Consequently, this court considered the curative instruction a sufficient remedy for the Commonwealth's error, making a mistrial unnecessary.

## VI. *Testimony of William Morales*

Appellant's next issue alleges that the Commonwealth "committed prosecutorial misconduct by presenting and relying upon the perjured testimony from William Morales to file the charges against defendant in this case and then present that testimony at trial."

First of all, appellant's allegation that Mr. Morales committed perjury is merely his opinion. Just because appellant objects to Mr. Morales' version of events does not mean that Mr. Morales was lying.

While Mr. Morales is hardly an upstanding citizen, it is unrealistic to expect that every witness to a crime will be an honest and law-abiding individual. Defense counsel was allowed to extensively cross-examine Mr. Morales, and ultimately, Mr. Morales' credibility was a question for the jury. "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine credibility of the witnesses." *Commonwealth v. McCloskey,* 835 A.2d 801, 809 (Pa. Super. 2003). (internal citations omitted)

Furthermore, the mere fact that there are some inconsistencies in a witness' testimony is not enough to destroy the Commonwealth's case or render the evidence insuf-

ficient to support the verdict. *Commonwealth v. Long,* 425 Pa. Super. 170, 185, 624 A.2d 200, 208 (1993), *appeal denied,* 535 Pa. 645, 633 A.2d 150 (1993).

Accordingly, this court finds nothing improper in the Commonwealth's decision to present Mr. Morales' testimony.

## VII. *Alleged Coercion of Gregory Burns*

Appellant also contends that the Commonwealth "committed prosecutorial misconduct when Criminal Investigator Angel Cabrera used coercion to attempt to influence Gregory Burns to testify that defendant admitted to him that defendant killed Burns' friend, Lowell Nicholas."

Again, appellant's claim that C.I. Cabrera coerced Mr. Burns is simply his opinion. C.I. Cabrera adamantly denied that he coerced any witness and it does not appear that Mr. Burns made any allegation of coercion to the appropriate authorities. NT, 5/16/05-5/20/05, at 73-74, 336-44. However, defense counsel was permitted to question both C.I. Cabrera and Mr. Burns regarding the alleged coercion and thereafter, the matter was one of credibility for the jury to decide. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine credibility of the witnesses." *Commonwealth v. McCloskey,* 835 A.2d 801, 809 (Pa. Super. 2003). (internal citations omitted)

Furthermore, even assuming that C.I. Cabrera had behaved inappropriately, there is no evidence that he did so at the instigation of the district attorney's office or that

the district attorney's office was ever aware of any misconduct.

Thus, for all the above reasons, this court finds this issue to be without merit.

## VIII. *Expert Firearms Testimony*

Appellant also claims that this court erred in permitting the Commonwealth to introduce testimony from a firearms expert.

"[A]n appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion." *Commonwealth v. Johnson,* 874 A.2d 66, 72 (Pa. Super. 2005), citing *Commonwealth v. Minerd,* 562 Pa. 46, 54, 753 A.2d 225, 229 (2000). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence or the record." *Johnson,* 874 A.2d at 72.

To be admissible, evidence must be competent and relevant. *Commonwealth v. Freidl,* 834 A.2d 638, 641 (Pa. Super. 2003). Here, the testimony at issue was both. While appellant claims that the expert's testimony was "inconclusive," such a claim goes to the weight of the evidence, not its admissibility. It was for the jury to determine what conclusions to draw from the firearms evidence. Accordingly, appellant's claim is without merit.

## IX. *Sentencing*

Appellant next alleges that this court "violated defendant's procedural due process rights and his right to a

jury trial ensured by the Fifth Amendment to the United States Constitution because the court failed to hold an evidentiary hearing and no notice was given to defendant that the court would rely on particular facts when imposing on all charges outside the PA sentencing guidelines. The court's findings of fact at sentencing not found by the jury violated the protections affirmed in *Apprendi v. NJ* and *Blakely v. Washington*."

This court has reviewed the transcript of the sentencing hearing and cannot find any facts that it relied on in sentencing appellant that were not supported by the jury's verdict or acceptable under the Sentencing Code. This court carefully considered the information contained in appellant's pre-sentence investigation report, including appellant's prior criminal record; the arguments of defense counsel regarding appellant's rehabilitative needs and mitigating factors; the serious nature of the crimes; the impact of the crimes on the victim and the community; the need to protect the community from future acts of violence; and appellant's demeanor.

While appellant's sentence was in the aggravated range of the sentencing guidelines, his sentence complied with the statutory limits and was not unreasonable given the serious nature of his crimes. The conduct of appellant and his accomplices killed one person and endangered numerous innocent bystanders. Furthermore, appellant is a poor candidate for rehabilitation given his lack of remorse and his repeat offending. Accordingly, this court did not err in sentencing appellant as it did.

## X. *Former Felon Not To Possess*

Appellant next argues that "the charge of former felon not to possess is an unconstitutional limitation on a citizen's right to bear arms. . . ."

While appellant was charged with, and convicted of, several offenses relating to the possession of a firearm, including firearms not to be carried without a license and possessing instruments of a crime, the charge of persons not to possess was withdrawn prior to trial. Accordingly, the constitutionally of that particular offense is utterly irrelevant to these proceedings.

## XI. *Ineffective Assistance of Counsel*

Appellant also claims that his trial counsel was ineffective for failing to talk to and call numerous witnesses, including Nelson Rodriguez, Melissa Dierdorf and Mamadu Sarr.

"As a general rule a [defendant/]petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant,* 572 Pa. 48, 67, 813 A.2d 726, 738 (2002). Therefore, this court will not address these issues.

## XII. *Merger*

Appellant next argues that his convictions for recklessly endangering another person should merge with his convictions for aggravated assault.

In order to determine if two offenses merge for sentencing purposes, the sentencing court must "assess whether the charges arose out of a single set of facts *and*

whether *all* the statutory elements of one offense coincide with the statutory elements of the other offense." *Commonwealth v. Martz,* 926 A.2d 514, 526 (Pa. Super. 2007). (emphasis in original) However, where more than one person is threatened or injured by a single act of the defendant, the defendant is criminally liable for the harm done to each victim. *Commonwealth v. Yates,* 386 Pa. Super. 282, 285, 562 A.2d 908, 910 (1989). As the Superior Court stated in *Yates,*

> "*There is no 'two for one discount' in the Pennsylvania Crimes Code, and we will not permit criminals to imply one through distortion of the common-law merger doctrine.* It shall not be a defense to liability that an indiscriminant force employed by a criminal injured or placed at risk more or different persons than intended. To the contrary, the only effective way for a criminal to limit potential liability in that respect is to choose more discriminant tools for achieving the criminal objective(s) sought, *i.e., to stop using firearms and other instruments of crime which place bystanders at risk.*" *Yates, supra* at 288, 562 A.2d at 911. (emphasis in original)

Here, appellant was convicted of two counts of recklessly endangering another person, one count for the victim Lowell Nicholas and the other count for the driver of the vehicle Felix Cruz. He was also convicted of two counts of aggravated assault for the injury to Lowell Nicholas. The recklessly endangering another person charge related to Lowell Nicholas did merge into the most serious aggravated assault charge for sentencing purposes. However, there was no greater charge into which the recklessly endangering another person charge related to Felix Cruz could merge. Ap-

pellant must accept responsibility for the harm he did to both Lowell Nicholas *and* Felix Cruz. He is not entitled to a "discount" because his reckless conduct threatened multiple victims. Therefore, his claim that this court erred in imposing separate sentences for recklessly endangering another person and aggravated assault is without merit.

## XIII. *Jury's Findings*

Appellant also alleges that "the jury failed to follow the court's instructions by finding defendant guilty of crimes as set forth in their verdict because the convictions were based upon speculation and conjecture due to the fact that they thought that defendant's alibi was 'too perfect' to be true and that he must have been involved despite no evidence that he was."

This court is confused at to what issue appellant is attempting to raise. As this court was not present during the jury's deliberations, we cannot say whether the jury believed appellant's alibi was "too perfect." However, this court is confident that the jury conscientiously considered the law and the facts in this case and that their verdict was the product of careful deliberation, not speculation and conjecture as appellant contends. To the extent that appellant appears to be challenging the sufficiency of the evidence supporting his convictions, that issue will be addressed below.

## XIV. *Weight of the Evidence*

Appellant also complains that the verdict was contrary to the weight of the evidence presented at trial.

"A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa. Super. 2002). The determination of whether a verdict is contrary to the weight of the evidence is vested in the sound discretion of the trial court, and will not be overturned absent abuse of discretion. *Id.* Therefore the decision may be reversed only if the verdict is so contrary to the evidence as to shock one's sense of justice. See *e.g., Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995); *Commonwealth v. Davidson,* 860 A.2d 575 (Pa. Super. 2004); *Commonwealth v. Bennett,* 827 A.2d 469, 481 (Pa. Super. 2003).

Appellant attempted to establish an alibi by presenting the testimony of Mark Williams, who in 2000 was part owner of a recording studio called Mike Murders Records. Williams testified that he was with the defendant on the evening of July 1, 2000. Defense exhibit 11 was a time tracking sheet used at Mike Murders Records. This tracking sheet indicated that on July 1, 2000 both the witness and appellant were present in the studio completing a "track search" from 11 p.m. to 1:13 a.m. (NT, 5/16/05-5/20/05, at 434-35.) However, the Commonwealth attacked the authenticity and hence the credibility of this document.

Conflicting testimony alone does not entitle the defendant to a new trial. See *Bennett,* 827 A.2d at 481. This is because "the weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine credibility of the wit-

nesses." *Commonwealth v. McCloskey,* 835 A.2d 801, 809 (Pa. Super. 2003). (internal citations omitted) Clearly the jury was free to disbelieve appellant's alibi witnesses and to accept the Commonwealth's version of events. Therefore, this court submits that it did not abuse its discretion in denying a new trial based on appellant's assertion that the verdict was contrary to the evidence.

## XV. *Sufficiency of the Evidence*

Appellant also raises several challenges to the sufficiency of the evidence supporting his convictions for aggravated assault, recklessly endangering another person, firearms not to be carried without a license and possessing instruments of a crime.

### Aggravated Assault

To support a guilty verdict for aggravated assault under 18 Pa.C.S. §2702(a)(1), the Commonwealth must prove beyond a reasonable doubt that appellant attempted to cause serious bodily injury to another or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. §2702(a)(1).

"The law is settled in this Commonwealth that in reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth as verdict winner." *Commonwealth v. Dobrinoff,* 784 A.2d 145, 146 (Pa. Super. 2001). "This standard is equally applicable to

cases where the evidence is circumstantial rather than direct, so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow,* 431 Pa. Super. 453, 458, 636 A.2d 1173, 1176 (1994). Furthermore, the trier of fact is free to believe any portion of the evidence presented. *Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986). This includes credibility determinations, and if a jury believes a witness, then the appellate court is bound by that determination where it is not wholly unreasonable. *Commonwealth v. Baker,* 511 Pa. 1, 511 A.2d 777 (1986).

The Commonwealth's evidence has been summarized above. The jury was presented with sufficient evidence to conclude beyond a reasonable doubt that appellant participated in the shooting at Schuylkill Avenue and Buttonwood Street and either caused or attempted to cause serious bodily injury to the victim under circumstances manifesting extreme indifference to the value of human life.

Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. §2301. Shooting a firearm at another individual undoubtedly creates a substantial risk of death and may cause serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Because the circumstantial evidence presented at trial puts appellant in the white van on the evening of July 1, 2000 with a firearm in his

hand, which he fired pointblank at the victim, and because the victim died on the evening of July 1, 2000, there is sufficient evidence to support the jury's verdict in that appellant is guilty of aggravated assault under 18 Pa.C.S. §2702(a)(1).

Furthermore, even if the jury chose not to believe that appellant actually fired a gun at the victim, nevertheless, there was still sufficient evidence to find appellant guilty beyond a reasonable doubt on the charge of aggravated assault on the basis of accomplice liability. "[O]ne person may be the actual perpetrator of the crime; however, another person is equally criminally liable if he aids that person with the intent of promoting that person's act." *Commonwealth v. Causey,* 833 A.2d 165, 172 (Pa. Super. 2003) (citing *Commonwealth v. Everett,* 297 Pa. Super. 320, 327, 443 A.2d 1142, 1145 (1982)). (internal citations omitted) The evidence at trial showed that appellant was, at the very least, the driver of the vehicle during commission of the crime. Therefore, the evidence presented at trial was sufficient for the jury to find that each element of aggravated assault was proven beyond a reasonable doubt under a theory of accomplice liability. See *id.* at 173.

While appellant argues that he lacked the necessary mens rea because he lacked the specific intent to kill, appellant need only have acted knowingly or recklessly to satisfy the requirements of section 2702(a)(1). Even if appellant did not intend to kill anyone, his conduct in firing a firearm at an occupied vehicle on a public street was certainly reckless. Therefore, for all the above reasons, the evidence was sufficient to support appellant's convictions for aggravated assault.

## Recklessly Endangering Another Person

Appellant is guilty of recklessly endangering Lowell Nicholas and Felix Cruz if it is proved that he recklessly engaged in conduct that placed the victims in danger of death or serious bodily injury. 18 Pa.C.S. §2705. A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct. 18 Pa.C.S. §302(b)(3). The risk must be of such nature and degree that, considering the nature and intent of the individual's conduct, and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct a reasonable person would have observed in the individual's situation. *Id.*

As discussed above, the Commonwealth presented considerable evidence that appellant discharged an operable firearm at the car occupied by the victims. Such conduct surely demonstrates a reckless disregard of the likelihood that the passengers of the car, or for that matter, innocent bystanders, would suffer serious bodily injury as a result of his gunfire.

## Firearms Offenses

In order to find appellant guilty of possessing an instrument of a crime, the jury must be satisfied beyond a reasonable doubt that appellant possessed a handgun, pistol, or other firearm, that this item was an instrument of a crime;[19] and that appellant possessed this item with

---

19. An instrument of a crime is anything specially made or specially adapted for criminal use or anything commonly used for crimi-

the intent to attempt to commit or commit a crime. 18 Pa.C.S. §907(b).

The Commonwealth presented testimony from Angel Rivera and William Morales that appellant possessed a gun at some point prior to the incident and that he had a .40 caliber gun that he used in the shooting of Lowell Nicholas. A gun is an object that is commonly used for criminal purposes and the evidence suggests that appellant's gun was possessed by him under circumstances inconsistent with any lawful uses a gun has. The jury could reasonably find that on the night of the shooting, appellant possessed a gun with the intent to engage in the shooting of Lowell Nicholas.

In order to prove appellant is guilty of carrying a firearm without a license, the Commonwealth must establish that appellant carried a firearm either in a vehicle or concealed on or about his person; that the firearm was in operating condition; that appellant was not in his home or place of business; and that appellant did not have a license for carrying a firearm. 18 Pa.C.S. §6106(a).

It was established at trial that appellant does not have a license for carrying a firearm. Additionally, there was testimony at trial from Angel Rivera and William Morales that appellant possessed a gun at some point prior to the incident and that he had a .40 caliber gun that he used in the shooting. This testimony, if believed by the jury, is sufficient to support a conviction on the charge of firearm not to be carried without a license.

---

nal purposes and possessed by the defendant under circumstances not manifestly appropriate for lawful uses it may have.

## XVI. *Testimony of Angel Rivera*

Appellant next claims that the Commonwealth "committed prosecutorial misconduct by presenting the testimony of Angel 'Billy' Rivera at trial because he was originally charged in this murder and then committed perjury to become a Commonwealth witness. . . ."

Appellant's allegation that Mr. Rivera committed perjury is merely his opinion. While Mr. Rivera was originally charged with the murder, he denied his involvement in the crime and presented an alibi for the murder which was supported by circumstantial evidence including hotel receipts and taxi records. N.T., 5/9/05-5/11/05, at 45-52, 246-55, 261-65. Defense counsel was allowed to extensively cross-examine Mr. Rivera, and ultimately, Mr. Rivera's credibility was a question for the jury. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine credibility of the witnesses." *Commonwealth v. McCloskey*, 835 A.2d 801, 809 (Pa. Super. 2003). (internal citations omitted)

Accordingly, this court finds nothing improper in the Commonwealth's decision to present Mr. Rivera's testimony.

## XVII. *Jury Instructions*

Appellant's last issue alleges that this court erred by failing to instruct the jury that mere presence at the scene of the crime is not sufficient evidence to convict him of any crimes.

First of all, this court has been unable to find where appellant raised this issue at trial or in his post-sentence

motions. "Issues not raised to the trial court are waived and cannot be raised for the first time on appeal. In order to preserve an issue for review, a party must make a timely and specific objection." *Commonwealth v. Duffy,* 832 A.2d 1132, 1137 (Pa. Super. 2003). See also, Pa.R.A.P. 302(a).

Furthermore, while this court did not give a general instruction to the jury that mere presence at the scene of the crime is not enough to support a conviction, when instructing the jury on both conspiracy and accomplice liability, this court explicitly explained to the jury that appellant was not guilty of conspiracy, nor was he an accomplice simply because he was present at the scene of the crime. N.T., 5/16/05-5/20/05, at 637-39. Thus, this court is confident that the jury understood that additional evidence beyond mere presence at the scene of the crime was necessary to find appellant guilty of the charges against him.

## CONCLUSION

For all the above reasons, the court respectfully requests that the defendant's appeal be denied and his sentence affirmed.