**Commonwealth v. Herd**

C.P. of Berks County, no. CR-06-CR-0001405-2006.

*Alisa Hobart, assistant district attorney,* for Commonwealth.

*Holly Kloos, assistant public defender,* for appellant.

BUCCI, *J.,* January 8, 2007—

## PROCEDURAL HISTORY

On October 6, 2006 following a bench trial, this court found appellant guilty of unsworn falsification to law enforcement authorities[1] and false reports to law enforcement authorities[2] and sentenced her to two years proba-

---

1. 18 Pa.C.S. §4904(a)(1).
2. 18 Pa.C.S. §4906(b)(1).

tion.[3] These charges arose out of false oral and written statements appellant made to police on July 17, 2005, when she claimed she was raped. On November 14, 2006, appellant's counsel filed a notice of appeal to the Pennsylvania Superior Court. On November 16, 2006, this court ordered appellant to file a concise statement of matters complained of on appeal, pursuant to Pennsylvania Rules of Appellate Procedure § 1925(b). Appellant filed a concise statement on November 29, 2006, challenging the weight and sufficiency of the evidence supporting the verdict.

## STATEMENT OF FACTS

The evidence at trial included the transcript of testimony from a pretrial hearing held May 10, 2006. On July 17, 2005, at approximately 3 a.m., appellant and her husband Donald Herd, as well as an acquaintance, Melissa Huber, were eating at Angelo's Diner in Bechtelsville, Berks County, Pennsylvania. Ms. Huber testified that she witnessed appellant leave the restaurant for no apparent reason and that no one was following her. N.T., pretrial hearing, 5/10/06, at 5-6; Commonwealth trial exhibit no. 1. Miss Huber's testimony concerning appellant's peculiar behavior on the night in question convinced this court that appellant fabricated her allegations that she was raped.

"Question by assistant district attorney: And at some point, did Dawn, the defendant, leave the restaurant?

---

3. Appellant was sentenced to two years probation on Count I and one year probation on Count II, the sentences to be served concurrently.

"Answer by Ms. Huber: Yes. . . .

"Q: Did the defendant leave before you?

"A: Yes.

"Q: Did the defendant leave before her husband?

"A: Yes.

"Q: Okay. Did she indicate why she was leaving?

"A: No.

"Q: Okay. She just left?

"A: Yep.

"Q: Can you describe her mood when she left?

"A: She definitely looked tense. She got up quick and just walked out.

"Q: And what did you and her husband do in response to the defendant leaving the restaurant?

"A: We both looked at each other and couldn't understand why. He asked me to go after her and would pay for the bill, and he would be right out.

"Q: And did you follow after her?

"A: Yes, I did.

"Q: And did—when you left the restaurant, did you see her?

"A: Yes.

"Q: Where did you see her?

"A: She was still in the parking lot.

"Q: What was she doing?

"A: She was getting ready to walk away, walk down the road.

"Q: And that is Route 100, I believe?

"A: Yes.

"Q: Now did anyone, other than yourself, follow her out of the restaurant?

"A: No.

"Q: Did any males—were there any males behind her?

"A: No.

"Q: Did she, in fact, leave the parking lot and start walking down the street?

"A: Yes.

"Q: Did you say anything to her before she left?

"A: Yeah. I told her to stop and turn around to talk to me, and she kind of waved her hands up and kept going.

"Q: When you say 'waved her hands up and kept going,' what do you mean?

"A: Almost like she was just ignoring me or didn't want to hear it. She just kept going.

"Q: And when she began to walk down the street, was anyone following her then?

"A: No." N.T., pretrial hearing, 5/10/06, at 5-7; Commonwealth trial exhibit no. 1.

Shortly thereafter, appellant's husband came out of the restaurant, and he and Ms. Huber got into Mr. Herd's truck with the intention of pursuing appellant. N.T., pretrial hearing, 5/10/06, at 7-8; Commonwealth trial exhibit no. 1. As Ms. Huber and Mr. Herd drove along Route 100, Ms. Huber saw appellant walking along the road. N.T., pretrial hearing, 5/10/06, at 8; Commonwealth trial exhibit no. 1. However, by the time they parked a short

distance ahead of appellant, she had disappeared into the wooded area along the road. N.T., pretrial hearing, 5/10/06, at 9; Commonwealth trial exhibit no. 1.

While Ms. Huber and Mr. Herd were looking for appellant, a Colebrookdale police officer arrived on the scene. Mr. Herd, Ms. Huber, and Colebrookdale Township Police Officer Alisha Mathias then called appellant on her cell phone, and tried repeatedly to convince her to come out of the woods. Appellant indicated to Ms. Huber that someone was following her. N.T., pretrial hearing, 5/10/06, at 11; Commonwealth trial exhibit no. 1.

Officer Mathias described her conversation with appellant as follows:

"Q: Did you have the opportunity to speak to her on the phone before she was brought out?

"A: Yes, I did.

"Q: And did she indicate what was happening in the woods at that time to you?

"A: No.

"Q: What did she say to you?

"A: She really didn't have a lot to say to me. I wanted her to know that I was a police officer and I was out there and that she needed to come out so they could go home for the evening.

"If I remember correctly, there were a few times she hung up the phone on me unexplained.

"Q: Did she, at any time, indicate to you that she was being raped?

"A: Absolutely not.

"Q: Did she indicate to you, at any time, that she was being followed?

"A: Absolutely not.

"Q: Did she indicate—did you, in fact, indicate to her that she—you were a police officer and that you were right outside the woods?

"A: Yes, I did.

"Q: Did she indicate to you that she was in danger?

"A: No." N.T., pretrial hearing, 5/10/06, at 18-19; Commonwealth trial exhibit no. 1.

When appellant was finally retrieved from the woods by a police officer, she was naked and first claimed she had been raped. N.T., pretrial hearing, 5/10/06, at 21; Commonwealth trial exhibit no. 1. She gave a statement to police at the hospital. N.T., pretrial hearing, 5/10/06, at 23; Commonwealth trial exhibit no. 1. However, the police found no evidence to confirm her allegations. N.T., pretrial hearing, 5/10/06, 31-32; Commonwealth trial exhibit no. 1.

Appellant was examined at the Reading Hospital Medical Center. The nurse examining her found no trauma to the vaginal area, such as bruising or tearing. N. T., bench trial, 10/6/06, at 9, 14. However, she documented scratches on appellant's arms, legs, back, buttocks, chest and face, as well as a bruise on appellant's inner thigh. Defendant's exhibit no. 1.

Appellant testified at trial that she abruptly left the restaurant because she was upset by a comment Ms. Huber made. N.T., bench trial, 10/6/06, at 22. She told

police that two men followed her out of the restaurant, immediately behind her. N.T., pretrial hearing, 5/10/06, at 23; Commonwealth exhibit no. 1. She claimed these men were making disparaging comments about her, so she started walking along Route 100 away from the diner. N.T., bench trial, 10/6/06, at 22-23. Appellant claimed that she eventually fled into the nearby woods to escape these two individuals, that they followed her, and that they raped her. N.T., bench trial, 10/6/06, at 31-33. She gave a signed written witness statement to the Colebrookdale Township Police Department detailing the events described above. Commonwealth exhibit No. 1.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Appellant first argues that the evidence is insufficient to sustain her convictions for unsworn falsification to law enforcement authorities and false reports to law enforcement authorities because the Commonwealth failed to prove beyond a reasonable doubt that the statements she made to the police are false or that appellant was aware of the falsity of her report.

"In reviewing the sufficiency of the evidence, [the court] must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt." *Commonwealth v. Hopkins,* 747 A.2d 910, 913 (Pa. Super. 2000), citing *Commonwealth v. Johnson,* 556 Pa. 216, 223, 727 A.2d 1089, 1092 (1999). "The facts and circumstances estab-

lished by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law no probability of fact can be drawn from the combined circumstances." *Id.*

"This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.' " *Commonwealth v. McFadden,* 850 A.2d 1290, 1293 (Pa. Super. 2004).

A person is guilty of unsworn falsification to authorities if, with intent to mislead a public servant in performing his official function, she makes any written false statement which she does not believe to be true. 18 Pa.C.S. §4904(a)(1). A person is guilty of false reports to law enforcement authorities if she reports to law enforcement authorities an offense or other incident within their concern, knowing that it did not occur. 18 Pa.C.S. §4906(b)(1).

This court is completely convinced that appellant was not raped on July 17, 2005, based on strong circumstantial evidence indicating she fabricated her story. In addition to the absence of any vaginal trauma, appellant's testimony was completely contradicted by the testimony of Ms. Huber, whom this court found to be an extremely credible witness. Although appellant testified that two men followed her out of the diner, Ms. Huber testified that she never saw anyone following appellant. Further-

more, this court had the opportunity to witness appellant's testimony and we did not find her testimony to be credible. This court was also concerned by testimony elicited by the Commonwealth on cross-examination which established that appellant had made several allegations of rape within the span of a few months. N.T., bench trial, 10/6/06, at 34-37.

Finally, while appellant was in the woods, she spoke on the phone with her husband, Ms. Huber, and the police, but never told anyone she was being raped. Her conduct from the time she stormed out of the restaurant until the police convinced her to come out of the woods was bizarre.

Once this court determined that appellant's written and oral statements to the police were false, in the absence of any testimony suggesting that appellant was incapable by mental disease or defect of knowing that her statements were not true, this court reasonably inferred that appellant's false reports had been made knowingly and intentionally.

Therefore, this court concludes that the evidence was sufficient to sustain the verdict as to both counts.

## II. *Weight of the Evidence*

Appellant also argues that the verdict was against the weight of the evidence.

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. McCloskey,* 835 A.2d 801, 809 (Pa. Super. 2003). In determining whether the ver-

dict is against the weight of the evidence, the role of the trial court is to determine whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer,* 560 Pa. 308, 320, 744 A.2d 745, 752 (2000). (citations omitted) Stated more concisely, the verdict should not be disturbed unless it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Miller,* 555 Pa. 354, 367, 724 A.2d 895, 901 (1999).

The Commonwealth's evidence is summarized above. After carefully reviewing the entire record and considering the relevant facts and law, this court cannot find that the verdict in this case was so contrary to the weight of the evidence that it shocks its sense of justice.

## CONCLUSION

For the reasons detailed above, this court submits that appellant's assignments of error should be denied and her judgment of sentence affirmed.