J-S47041-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHANNON DEGEORGE, | : | |
| | : | |
| Appellant | : | No. 2054 MDA 2014 |

Appeal from the Judgment of Sentence Entered July 2, 2014,
in the Court of Common Pleas of Lebanon County,
Criminal Division, at No(s): CP-38-CR-0000655-2013

BEFORE:   ALLEN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED AUGUST 14, 2015**

Shannon DeGeorge (Appellant) appeals from the judgment of sentence imposed following his conviction for robbery.  We affirm.

On February 13, 2013, Appellant was charged with the February 11, 2013 robbery of the Metro Bank in Lebanon, Pennsylvania. This robbery was believed to be connected to two earlier robberies, perpetrated by the same individual, that occurred in Berks County on February 6 and 8, 2013. Appellant pled guilty to the Berks County cases on September 18, 2013, and was sentenced to three and a half to seven years' incarceration.

Trial in the instant case was scheduled for May 5, 2014.  On April 29, 2014, the Commonwealth filed notice pursuant to Pa.R.E. 404(b), indicating its intent to introduce evidence of certain prior bad acts during its case-in-chief. Prior to trial, the court heard argument with respect to the

*Retired Senior Judge assigned to the Superior Court.

Commonwealth's motion. At that time, the trial court granted the Commonwealth's motion in part, ruling that the factual details of the Berks County robberies were admissible, but indicating that the jury would not be told of Appellant's guilty pleas to those offenses unless he opened the door to the issue during his testimony. N.T., 5/5/2014, at 1-6.

On May 8, 2014, following a jury trial, Appellant was convicted of the aforementioned offense. On July 2, 2014, Appellant was sentenced to a term of three to ten years' incarceration. The sentence was directed to run consecutively to all other sentences Appellant was then serving. Appellant filed timely post-sentence motions, which were denied on October 30, 2014. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises four issues for our review.

I. Did the Commonwealth fail to present sufficient evidence at trial to prove beyond a reasonable doubt that Appellant was the person who robbed the Metro Bank on February 11, 2014?

II. Did the jury place too great a weight on the identification testimony of [Ms.] Aponte and [Ms.] Hartz that Appellant was the person [who] robbed the Metro Bank on February 11, 2014?

III. Did the [trial court] err in granting the Commonwealth's 404(b) Motion to introduce testimony at trial that Appellant was a suspect in two (2) different bank robberies on February 6, 2014 and February 8, 2014 and the underlying facts of those robberies?

IV. Did the [sentencing court] commit a manifest abuse of discretion by sentencing Appellant in the aggravated range, and

- 2 -

running Appellant's sentence consecutive to any other sentence Appellant was serving at the time?

Appellant's Brief at 4 (suggested answers omitted).

We begin by addressing Appellant's argument that the evidence was insufficient to support his conviction for robbery under 18 Pa.C.S. § 3701(a)(1)(vi). Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (citations and quotations omitted).

The statute under which Appellant was convicted provides, in relevant part, that "[a] person is guilty of robbery if, in the course of committing a theft, he … takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee

of the financial institution orally or in writing with the intent to deprive the financial institution thereof[.]" 18 Pa.C.S. § 3701(a)(1)(vi). A "financial institution" is defined as a "bank, trust company, savings trust, credit union or similar institution." *Id.* at (a)(3).

Appellant contends that his conviction should be reversed because

… the Commonwealth failed to present any physical evidence in the form of fingerprints, clothing, or money that [Appellant] committed the robbery, and of the four Commonwealth witnesses who testified at trial only two identified [Appellant], and those two witnesses acknowledged they only interacted with the robber for a short period of time and portions of the robber[']s facial features were not visible.

Appellant's Brief at 12.

The Commonwealth presented the following evidence at trial.

Kaitlin Aponte (hereinafter "Ms. Aponte") was employed as a bank teller at the Metro Bank on East Cumberland on February 11, 2013. On that date, a man was standing at the check writing station "for a little — for a while." As soon as the man turned around and walked to the teller line, Ms. Aponte said "I can assist you here." The man handed Ms. Aponte a deposit ticket, and she looked behind the ticket and it had a note on it telling her to give [him] all the money. The note stated, "No dye pack, tracking chips. All [$$], start with big bills on desk, nobody hurt." She asked the man if he was serious, and "He told me, yes, just give me all your money." Ms. Aponte gave him all of her strapped money, and asked him if that was all, to which he responded "yes." The man left the bank, and ran off in the street. Ms. Aponte described the man's voice as soft and deep toned. Ms. Aponte identified [Appellant] as the individual. It was ultimately determined that Ms. Aponte's drawer was short $2,637.57. [The man Ms. Aponte observed on] the date of the robbery[] was wearing a dark sweatshirt and gloves. The man had a beanie right above his eyebrows. The man had a dark brown, full beard that went up a little bit on his cheeks, and he had a little bit of a mustache. After the robbery, a photo lineup

- 4 -

was shown to Ms. Aponte where she was able to select [Appellant] out of the lineup. She was not 100% sure, but she was "pretty sure" that he was the man. When she was finished, she did not tell anybody else in the bank who[m] she had selected. When asked if it was difficult to make out all the facial features of the person that committed the robbery, Ms. Aponte responded, "I remember his face. His face was out."

Amber Hevel (hereinafter "Ms. Hevel") was also employed at the same branch on the same day. Ms. Hevel remembered the man wearing boots, jeans, a sweatshirt, gloves, and a beanie. The man went to the check writing station, then went up to Ms. Aponte. Ms. Hevel only remembered Ms. Aponte saying "all of it." She then heard the man mumble "hurry." Ms. Hevel never looked at the man's face. Ms. Hevel thought the man was about 6 foot tall and 200 pounds. The man appeared to be light skinned. Ms. Hevel also looked at the photo lineup, but she was not able to identify anyone.

Erika Perez (hereinafter "Ms. Perez") was employed at the same branch on the same date as a customer service representative. Ms. Perez saw a man come in, go to the check writing station, then go up to where the tellers were. The man appeared to be nervous and was looking over his shoulder. The man asked a co-worker what the date was. The man was wearing a dark hoodie with the hood up, and he also had dark pants. Ms. Perez did not recall if the man was wearing gloves. She thought he was 6 foot and 200 pounds. The man looked about 30. He was light skinned. Ms. Perez did not recall any facial hair. Ms. Perez could not identify anyone in the photo lineup.

Lachan Hartz (hereinafter "Ms. Hartz") is a teller who was working at the bank on February 11, 2013. Ms. Hartz was outside of the bank when the robbery took place. Prior to leaving the bank for lunch, Ms. Hartz noticed a male at the check cashing station that asked her what the date was. Ms. Hartz was provided the photo lineup and identified [Appellant]. At trial, Ms. Hartz identified [Appellant] as that individual.

Christopher Mayer (hereinafter "Mr. Mayer"), a Criminal Investigator for the City of Reading Police Department, testified to two bank robberies that occurred on February 6, 2013 and

February 8, 2013 at the Citizens Bank in Reading. Photographs were obtained from the video surveillance from these robberies. Mr. Mayer testified that [Appellant] was the individual that was ultimately determined to be the individual in the surveillance video.

Sergeant Johnathan Hess (hereinafter "Sergeant Hess") was in charge of the investigation of the robbery on February 11, 2013. A daily report is circulated throughout various law enforcement agencies in the state, and Sergeant Hess learned about the robberies in Reading in this report. Sergeant Hess contacted Mr. Mayer, and Mr. Mayer provided the name of [Appellant]. Based off this information, the photo lineup was compiled. The [women present during the Metro Bank robbery] were taken into a private room one at a time at the bank [to look] at the photo lineup. Sergeant Hess testified that only Ms. Aponte and Ms. Hartz identified [Appellant] when he showed them the photo lineup. The identification made by Ms. Hartz was "relatively quick and she identified him with a hundred percent certainty." None of the [women] identified another individual other than [Appellant]. [Sergeant] Hess noticed when Ms. Aponte exited the conference room, Ms. Hartz entered the room, and they did not have any time to speak to each other.

[Appellant] testified that he did not commit the robbery at the Metro Bank on February 11, 2013, but he was at home at his residence in Reading all day. [Appellant] also testified that he did not commit the robberies in Reading, and the only reason he pled guilty to [those] robberies was to receive a lower sentence pursuant to a plea deal. He testified, "... [I]t was an easy choice, not have to do anymore time and plead guilty, and/or fight it and risk getting two and a half to ten years extra."

Trial Court Opinion, 10/30/2014, at 1-4 (citations omitted).

When this evidence is viewed in the light most favorable to the Commonwealth as the verdict winner, we cannot agree that it is unreliable and speculative as claimed by Appellant. Two eyewitnesses who had the opportunity to observe the robber closely identified Appellant. Such

testimony, if believed by the jury, was sufficient to identify Appellant as the perpetrator. *See*, *e.g.*, *Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa. Super. 2006). Thus, we agree with the trial court that the evidence presented was sufficient for the jury to conclude beyond a reasonable doubt that Appellant, "in the course of committing a theft, took money from Metro Bank without the bank's permission by making a demand of Ms. Aponte, a bank employee, both orally and in writing with the intent to deprive the bank of the money." Trial Court Opinion, 10/30/2014, at 7. Accordingly, Appellant's first issue is without merit.

Appellant next challenges the weight of the evidence. Appellant's Brief at 12-13.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Appellant argues that the jury placed improper weight on the testimony of Ms. Hartz and Ms. Aponte, emphasizing the limited timeframe in which the women had to observe the robber and Ms. Aponte's uncertainty during the photo lineup. Appellant's Brief at 13. "When, [as here], the challenge to the weight of the evidence is predicated on the credibility of … testimony, our review of the trial court's decision is extremely limited." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009). Generally, unless the evidence is so unreliable or contradictory as to make any adjudication based thereon pure conjecture, these types of claims are meritless on appeal. *Id.*

The jury, sitting as the finder of fact in the present case, was free to evaluate and weigh all the testimony presented, especially related to the credibility of the witnesses. While Appellant offered a conflicting version of events from that testified to by the eyewitnesses at the bank, the jury found the testimony of the Commonwealth's witnesses with respect to the identification of Appellant to be credible. The jury is "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. McCloskey*, 835 A.2d 801, 809 (Pa. Super. 2003). Moreover, the trial court did not find that verdict was so contrary to the evidence as to shock one's sense of justice. Trial Court Opinion,

10/30/2014, at 9. Accordingly, we conclude that the trial court did not abuse its discretion.

Appellant next claims that the trial court erred in granting the Commonwealth's Rule 404(b) motion because the Commonwealth failed to provide reasonable notice prior to trial, as required by the Rule. Appellant's Brief at 13-14.[1] Appellant failed to preserve this issue by objecting to the alleged lack of notice at the pre-trial hearing. Moreover, Appellant failed to raise this issue in his 1925(b) statement. Accordingly this claim is waived. Pa.R.A.P. 302(a) (providing that issues which were not raised before the trial court are waived and may not be raised for the first time on appeal).

Appellant's final claim challenges the discretionary aspects of his sentence. It is well-established that a criminal defendant does not have an absolute right to challenge the discretionary aspects of his sentence on appeal. *See Commonwealth v. Bishop*, 831 A.2d 656, 660 (Pa. Super. 2003). Before we may reach the merits of a challenge to the discretionary aspects of sentencing, we must be satisfied that: (1) the appeal is timely filed; (2) the appellant has preserved his issues; and (3) the appellant has included in his brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects

---

[1] Appellant's argument on this point is confined to the lack of reasonable notice. He does not challenge the propriety of the trial court's ruling on the substance of the motion, accordingly we will not address that ruling on appeal.

of sentence. Furthermore, the concise statement must raise a substantial question that the sentence is inappropriate under the sentencing code. **See Commonwealth v. Corley**, 31 A.3d 293, 295-96 (Pa. Super. 2011).

The instant appeal was timely filed. Additionally, Appellant has preserved his claim in a timely filed post-sentence motion, and he has included in his brief a Rule 2119(f) statement. Accordingly, we must determine whether Appellant has raised a substantial question for our review.

"The determination of whether a substantial question exists must be determined on a case-by-case basis." **Commonwealth v. Hartman**, 908 A.2d 316, 320 (Pa. Super. 2006) (citation omitted). "A substantial question exists where an appellant advances a colorable argument that the sentencing judge's actions [were] either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** (quoting **Commonwealth v. Koren**, 646 A.2d 1205, 1208-1209 (Pa. Super. 1994)).

Appellant contends that the sentencing court failed to place on the record sufficient reasons to warrant the imposition of an "aggravated range" sentence, and contends that the court committed an abuse of discretion by imposing the instant sentence consecutive to any he was already serving. Appellant's Brief at 9. "The imposition of consecutive, rather than concurrent, sentences **may** raise a substantial question in only the most

extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*) (citation omitted)(emphasis added). Further, this Court has held that claims that the sentencing court imposed a sentence **outside the standard guidelines** without stating adequate reasons on the record presents a substantial question. ***See Commonwealth v. Robinson***, 931 A.2d 15, 26 (Pa. Super. 2007).

Instantly, contrary to Appellant's argument, the sentence imposed falls at the bottom of the standard guideline range. Trial Court Opinion, 10/30/2014, at 14-15. Moreover, given the trial court's consideration of the serious nature of the crimes committed in this case, of Appellant's prior record as a repeat offender, and of the pre-sentence investigation report[2] prepared in this matter, we do not believe Appellant's consecutive sentence appears, on its face, manifestly excessive. Accordingly, we find that Appellant has failed to raise a substantial question for our review, and we affirm his judgment of sentence.

---

[2] "Where the sentencing court had the benefit of a presentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa. Super. 2013) (internal quotes and citations omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2015