J-S43025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD HUGHES | : | |
| | : | |
| Appellant | : | No. 2544 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 11, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0006263-2021

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY STABILE, J.: **FILED MAY 19, 2025**

Appellant, Donald Hughes, appeals from his judgment of sentence of 5-10 years' imprisonment for homicide by vehicle while driving under the influence of alcohol ("homicide by vehicle while DUI") followed by a consecutive term of probation. Appellant's sentence for homicide by vehicle while DUI was the mandatory minimum sentence prescribed under Pennsylvania law. We affirm.

The trial court accurately summarized the evidence as follows:

This matter arises from a motor vehicle accident which resulted in the death of Faith Graham (hereinafter "Decedent") on August 25, 2020. On that date, State Trooper Francis Krouse and his partner, Trooper Shane Dunlevy, responded to a radio call for a car crash that occurred on the southbound side of interstate highway 95 ("I-95"), near mile marker 32, at approximately 10:58 p.m. Upon arrival, Trooper Krouse observed Decedent laying between the left lane and the shoulder of the highway. She was nonresponsive.

Decedent had been sitting in the front passenger seat of a Toyota RAV 4 sport utility vehicle. The driver of the RAV 4, James Hibble,

was not seriously injured. Mr. Hibble relayed to Trooper Krouse that he had just picked up Decedent from her place of work and, while driving on I-95, a white truck entered his lane and struck his vehicle. As the RAV 4 rolled across the highway, Decedent was fatally ejected.

Trooper Krouse's Motor Vehicle Record ("MVR"), the surveillance video captured from the camera attached to the dashboard of the Trooper's vehicle, was then played for the court. The MVR depicts Trooper Krouse arriving at the scene. That section of I-95 is slightly curved with three lanes bending towards the exit ramp. There is no additional exit lane; however, the right lane widens shortly before the exit. There is a bridge right before the exit ramp which caps the width of the right lane. The left side of I-95 southbound is bordered by a metal guide rail and a grass center median, which separates I-95 southbound from northbound traffic. The right side of I-95 southbound is bordered by a usable shoulder and a metal guide rail. Decedent is observed sprawled on the highway partially in the left lane, and partially on the left shoulder of the road. The RAV 4 is in a resting position, on the opposite side of the guiderail, propped up off the ground, and on top a PennDOT utility box.

Trooper Krouse, having been informed by Trooper Lawver that the other vehicle involved in the collision was the white Chevy Silverado truck parked approximately fifty yards south on the shoulder of I-95, approached the Silverado and came into contact with [Appellant]. [Appellant] stated to Trooper Krouse that he was traveling home from a Knights of Columbus meeting, where he consumed two beers and two shots in a three-hour time span. [Appellant] further stated that he was traveling southbound in the middle lane at about 70 MPH when the RAV 4 swerved into his truck, striking the passenger side. As [Appellant] sped up to avoid further contact with the RAV 4, he observed the RAV 4 roll over behind his truck; after which, [Appellant] pulled over to the side of the road.

While speaking with [Appellant], Trooper Krouse sensed a strong odor of alcohol emanating from [Appellant]'s breath and noted that [Appellant] was stuttering through his speech. Trooper Krouse proceeded to conduct a field sobriety test on [Appellant] and [Appellant] failed to perform the test successfully. [Appellant] was then placed under arrest and transported to Jefferson Torresdale Hospital, where he consented to a blood

draw. The toxicology report from the blood draw recorded a blood alcohol concentration (BAC) of 0.194.

Dr. Richard Cohn, a forensic toxicologist, concluded that at and around the time the blood was drawn, it was reasonably scientifically certain that [Appellant]'s alertness, sense of care and caution, perception, judgment, response time and coordination were markedly impaired by alcohol such that [Appellant] was unfit to operate a motor vehicle safely on the highway.

Trooper Krouse prepared a Vehicle Crash Report. The Crash Report indicates that the Silverado was traveling south within the center southbound travel lane of I-95. The RAV 4 was traveling south within the right southbound travel lane of I-95. The Silverado then entered the right southbound travel lane and side-swiped the RAV 4. Following the impact, the RAV 4 overturned and rolled over several times crossing the center and left southbound lanes. Decedent was ejected from the RAV 4 and landed in the left southbound travel lane. The RAV 4 continued to roll over and hit the left guiderail. The RAV 4 then traveled over the left guide rail and hit a PennDOT utility box in the grassy area of the center median on the northbound side of the guiderail. The RAV 4 came to a final rest on its driver's side facing northbound on top of the PennDOT utility box in the grass center median. The Silverado then continued southbound on I-95 and pulled over on the right shoulder. The Crash Report further notes that the streetlights and other sources of ambient lighting were prevalent in the area at the time of the accident. It was also noted that there were no adverse road conditions, and the road surface was dry.

An Accident Reconstruction Report was prepared by Trooper Butler. To prepare the Accident Reconstruction Report, Trooper Butler reviewed and evaluated the area of impact, the physical evidence from the roadway, the position of both vehicles, the roadway geometry, the location of roadway signage and warnings, electronic data from available event data recorders, [Appellant]'s toxicology report, digital photographs from the Forensic Services Unit, and scan data from the 360 degree scanner. Based on his evaluation, and as memorialized in the Accident Reconstruction Report, Trooper Butler concluded: (1) [Appellant] failed to maintain his lane, crossed into the right travel lane and struck the RAV 4 with his Silverado; (2) Decedent was not wearing a seatbelt and was subsequently ejected from the RAV 4 during the roll over,

mortally wounding her; (3) [Appellant]'s BAC was .194%; and (4) both vehicles were road worthy and would have passed a Pennsylvania State Safety Inspection. In support of his conclusion, Trooper Butler noted: (1) the RAV 4 had damage all over its exterior from a rollover and subsequent launch over the guiderail; (2) the Silverado had minor damage to the right side of the vehicle consistent with a glancing strike; (3) the damage to the Silverado was in an upward pattern where there was an impact point and then tire ruboff from the RAV 4 on the truck-bed; (4) there were several markings on the roadway consisting of scrapes, gouges, scratches and tire marks; (5) the markings began with tire marks from a sideway-slipping vehicle in the right shoulder and right lane close to the fog line; (6) following the yaw marks were scratch marks in the right lane that lead up to several gouges and scrape marks from the rollover of the RAV 4; and (7) beginning with the yaw marks, all of the roadway markings follow along a single path ending at the RAV 4.

Trooper Butler also recorded an audio statement from Mr. Hibble, which was played for the court. Mr. Hibble stated: (1) that prior to the incident, he was driving in the right lane at about sixty to sixty-five miles per hour; (2) he was not texting or on his phone; (3) a white pickup truck rapidly approached him from behind, straddling the center and right lanes, with the truck's passenger side in the right lane; (4) when he saw the white truck approach, he steered his vehicle to the right towards the shoulder, to get out of the way; (5) the white truck then struck his vehicle; and (6) he then tried to counter-steer the vehicle back to the left, and that action caused his vehicle to roll.

Trooper Butler concluded that the accident started when the Silverado quickly came up behind the RAV 4, which forced Mr. Hibble to steer into the right lane shoulder in an attempt to move out of the way. Unable to completely move out of the way, the RAV 4 was then struck by the Silverado, which pushed the RAV 4 even further right, over the fog line and towards the right guiderail. Mr. Hibble then attempted to correct the RAV 4's course by counter-steering the RAV 4 left and back into the right lane. Mr. Hibble's attempt to counter-steer the RAV 4 back into the right lane is evidenced by the yaw marks on the pavement along the fog line. Mr. Hibble's attempt to counter steer caused the RAV 4 to elevate off of the roadway and climb up along the side of the Silverado until the Silverado passed the RAV 4. After the

Silverado passed, the RAV 4 proceeded to flip and roll left across I-95 until it came to its final rest.

The defense called Robert Lynch to testify as an expert in accident reconstruction. For Mr. Lynch's assessment of the incident, he reviewed the Commonwealth's police crash report, the general offense report, other police documents, photographs of the scene, MRV images, the event data from [Appellant]'s vehicle, and the scan data. Mr. Lynch offered two general opinions. First, Mr. Lynch contends that Mr. Hibble was encroaching into the center lane from the right lane when the initial impact occurred. Second, he contends that there is no physical evidence to support where the impact occurred, and, thus, the question of who moved into whom initially cannot be established.

On rebuttal, Trooper Butler explained that the physical evidence and photographs show that the RAV 4 followed a straight and continuous trajectory beginning with the yaw marks along the fog line, which led to the scraping and other fresh marks on the pavement from the flip and the wheel slaps of the subsequent rolls, all the way to the grassy area, off the guiderail, and to the RAV 4. Trooper Butler testified that Mr. Lynch's conclusion that the yaw marks were unrelated to the accident and, thus, the accident likely began when the RAV 4 was turning from the right lane into the center lane and into [Appellant]'s vehicle was not consistent with the physical evidence.

Pa.R.A.P. 1925 Opinion, 2/9/24, at 3-8 (record citations omitted).

Prior to trial, Mr. Hibble died from a drug overdose. Following a non-jury trial, the court found Appellant guilty of homicide by vehicle while DUI, homicide by vehicle, DUI: General Impairment 1st offense, and two counts of recklessly endangering another person. On May 11, 2023, the court imposed sentence. Appellant filed a timely post-sentence motion, which the court denied, and a timely appeal. Both Appellant and the court complied with Pa.R.A.P. 1925.

- 5 -

Appellant raises the following issues in this appeal, which we re-order for purposes of convenience:

1. Did the Commonwealth fail to prove homicide by vehicle while DUI and homicide by vehicle when it failed to prove that [Appellant]'s intoxication or deficient driving caused the victim's death?

2. Did the Commonwealth violate **Brady v. Maryland** by failing to disclose that [Mr.] Hibble underwent a field sobriety test at the scene of the accident until defense counsel elicited the information from a Commonwealth witness on cross examination?

3. Did the lower court abuse its discretion because it refused to grant [Appellant] a hearing on his post-sentence motion alleging ineffective assistance of counsel because the interests of justice were best served by immediately addressing [Appellant]'s discrete allegations of deficient performance?

4. Did the lower court impose an illegal mandatory-minimum sentence when it used an earlier admission into ARD as a "prior offense" for a recidivism statute?

Appellant's Brief at 4-5.

We first address Appellant's argument that the evidence was insufficient to sustain his conviction for homicide by vehicle. Our standard of review is

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record

- 6 -

must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).

The legislature defines homicide by vehicle as follows:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3803 (relating to driving under the influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a). The Commonwealth must prove that "(1) defendant violated a Pennsylvania statute (except the DUI statute) or municipal ordinance relating to operation or use of a vehicle or regulation of traffic, (2) the violation caused the victim's death, and (3) defendant's conduct was either reckless or grossly negligent." *Commonwealth v. Sanders*, 259 A.3d 524, 529 (Pa. Super. 2021).

The evidence, viewed in the light most favorable to the Commonwealth, satisfies the first element, violation of a provision of the Vehicle Code. Appellant violated three such provisions. The Vehicle Code provides, "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions . . . nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." 75 Pa.C.S.A. § 3361. The Vehicle Code also provides, "[N]o person shall drive a

vehicle at a speed in excess of the following maximum limits: . . . (2) 55 miles per hour in other locations." 75 Pa.C.S.A. § 3362. Appellant admitted driving 70 miles per hour. The speed limit on I-95 where the collision occurred was 55 miles per hour. Commonwealth Exhibit 14, Accident Reconstruction Report. N.T., 2/1/23, at 155-56 (admitting exhibit 14 into evidence). Viewed in the light most favorable to the Commonwealth, the evidence established that Appellant was speeding and was driving at a speed faster than what was reasonable and prudent under the circumstances. Furthermore, the Vehicle Code provides, "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S.A. § 3736. While under the influence, Appellant traveled at a speed significantly over the speed limit. He was straddling two separate lanes and could not properly maintain his lane as he navigated a curve, thus causing another driver to take emergent evasive maneuvers in an attempt to avoid what was unavoidable.

Next, Appellant's conduct was reckless. The Crimes Code defines the element of "reckless" as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). As discussed above, Appellant violated Pennsylvania's reckless driving statute, 75 Pa.C.S.A. § 3736 by driving fifteen miles per hour over the speed limit, having a BAC of .194, straddling two separate lanes, and failing to maintain his lane as he navigated a curve. This conduct qualifies as reckless driving. *Commonwealth v. Matroni*, 923 A.2d 444, 448 (Pa. Super 2007) (evidence was sufficient to establish recklessness where appellant was speeding and erratically switched lanes).

The evidence also demonstrated that Appellant caused the victim's death. To establish criminal causation, the Commonwealth must satisfy a two-part test. First, as to the cause of death, "causation occurs when the Motor Vehicle Code violation is a direct and substantial factor in the victim's death, and the fatal result is not extraordinary or remote." *Sanders*, 259 A.3d at 530. A death can have multiple direct causes, and a defendant whose conduct was "a direct and substantial factor in producing the death" may establish a causal connection even if other direct causes contributed. *Commonwealth v. Nunn*, 947 A.2d 756, 760 (Pa. Super. 2008). The defendant's acts need not be the sole cause of death to establish this connection. *Commonwealth v. Rementer*, 598 A.2d 1300, 1305–07 (Pa. Super. 1991) (defendant was but-for cause of his girlfriend's death where she was hit by car after fleeing his assault). "[S]o long as defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found." *Commonwealth v. McCloskey*, 835 A.2d 801, 808 (Pa. Super. 2003).

Second, the defendant's actions must also not be so remote or attenuated that it would be unfair to hold him criminally responsible, and the victim's death must be the natural or foreseeable consequence of his actions. *Rementer*, 598 A.2d at 1305, 1307–08 (evidence was sufficient to satisfy criminal causation where defendant attacked the victim in a car surrounded by other moving cars because it was entirely foreseeable that the victim would flee from the attack and be hit by another car); *see also Commonwealth v. Devine*, 26 A.3d 1139, 1150 (Pa. Super. 2011) (evidence was sufficient to satisfy causation where defendant initiated a gunfight on a crowded street and the victim was caught in the cross-fire, because the fact-finder could "reasonably infer a causal nexus" between defendant's conduct and the victim's death).

Trooper Butler, a collision analysis reconstruction specialist, prepared an expert report detailing the cause of the collision. He explained that Appellant's Silverado side swiped the victim's RAV 4 and caused the RAV 4 to flip over. The damage to the side of Appellant's Silverado indicated that he was going faster than the victim's RAV 4 and swiped the RAV 4. Contrary to Appellant's assertion that a car struck him while he was in the center lane, the collision occurred in the right lane. Had the RAV 4 hit Appellant's Silverado, the Silverado would have had considerably more damage and would likely have spun out because the rear bed of an empty pickup truck is very light.

The evidence establishes that Appellant's conduct was a direct and substantial cause of the decedent's death. Appellant caused the accident by

- 10 -

driving fifteen miles per hour over the speed limit, colliding with the victim's vehicle, and causing it to flip and resulting in the victim's ejection from the vehicle. Although the decedent was not wearing a seatbelt, it was not necessary for Appellant's conduct to be the sole cause of the decedent's death. Appellant's conduct "started the chain of causation which led to the victim's death." **McCloskey**, 835 A.2d at 808. Furthermore, the victim's death was not a remote consequence of Appellant's conduct; it was a natural or foreseeable consequence of his reckless driving.

Appellant contends that the evidence was insufficient to sustain his conviction for homicide by vehicle by referring us to (1) his own statement that another vehicle was driving erratically and (2) the statement of non-testifying witness Crystal Gnau that she saw a black car driving erratically before the accident. When reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the Commonwealth. The substantial evidence of guilt described above, viewed in the light most favorable to the Commonwealth, supports Appellant's conviction, notwithstanding his focus on his and Gnau's statements.

The evidence was also sufficient to convict Appellant of homicide by vehicle while DUI. A person commits homicide by vehicle while driving under the influence by "unintentionally caus[ing] the death of another person as the result of a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) and [] is convicted of violating section 3802." 75 Pa.C.S. § 3735(a). "A conviction for homicide by vehicle while DUI

requires: (1) a conviction for drunk driving; and (2) proof that drunk driving is what caused the death." ***Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006).

As discussed above, the evidence was sufficient to sustain Appellant's conviction for homicide by vehicle. Appellant was also convicted of DUI, and the evidence was sufficient to sustain this conviction. The DUI statute prescribes that "an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). Here, Appellant was driving with a BAC more than double the legal limit. Dr. Cohn, an expert forensic toxicologist, testified that based on Appellant's BAC, it was reasonably scientifically certain that his alertness, sense of care and caution, perception, judgment, response time, and coordination were markedly impaired by alcohol such that he was unfit to drive. Trooper Krouse testified that Appellant's breath had a strong odor of alcohol and he was slurring his words as he spoke. Furthermore, the evidence demonstrates that Appellant's drunk driving caused the decedent's death. As discussed above, Appellant had multiple alcoholic drinks, chose to get behind the wheel of his vehicle, and chose to speed on a highway while he could not maintain his lane.

Accordingly, Appellant's challenge to the sufficiency of the evidence fails.

Next, Appellant argues that the trial court abused its discretion when it denied his two claims of ineffective assistance of trial counsel in his post-sentence motion. Appellant claimed that trial counsel was ineffective for failing to object to the introduction of the recorded statement Mr. Hibble gave to the police in which he stated that a white vehicle swerved into his lane. Mr. Hibble died subsequent to his statement and prior to trial. Thus, Appellant claims, Mr. Hibble's statement was hearsay, and its introduction also violated Appellant's Sixth Amendment right to confront his accuser. Second, Appellant claimed that counsel was ineffective for failing to object when the Commonwealth disclosed during trial that Mr. Hibble had been given a field sobriety test at the accident scene. According to Appellant, counsel should have objected that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), by failing to disclose material evidence favorable to the defense prior to trial. We hold that the trial court properly declined to entertain claims of ineffective assistance at the post-sentence stage.

In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed the general rule which was initially set forth in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." **Holmes**, 79 A.3d at 576. **Holmes** set forth two limited exceptions to this general rule: (1) in "an extraordinary case where the trial court, in the exercise of its discretion,

- 13 -

determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted[;]"[1] or (2) when the defendant raises "multiple, and indeed comprehensive, ineffectiveness claims[,]" which the court, "in its discretion, and for good cause shown," determines post-verdict review is warranted, and the defendant waives his right to PCRA review.[2] *Id.* at 577-78. Thus, we must ascertain whether Appellant meets either of the *Holmes* exceptions. In so doing, we reiterate while the trial court retains discretion to address ineffectiveness claims on post-sentence motions, "the presumption weighs heavily in favor of deferring such claims to collateral review." *Commonwealth v. Knox*, 165 A.3d 925, 928 (Pa. Super. 2017).

Appellant fails to meet the first *Holmes* exception. He is not serving a short sentence, and we see nothing that demonstrates any "extraordinary" circumstance that calls for immediate consideration. *Burno*, 94 A.3d at 971. Appellant can raise these claims of ineffectiveness in a petition for relief under

---

[1] The Supreme Court has strongly linked this exception to so-called "short sentence" cases where an appellant might be unable to avail him or herself of PCRA review prior to the expiration of the sentence. *See Commonwealth v. Burno*, 94 A.3d 956, 971 (Pa. 2014).

[2] Courts may also entertain ineffectiveness claims in post-sentence motions when the defendant is ineligible for PCRA review. *See Commonwealth v. Delgros*, 183 A.3d 352, 353 (Pa. 2018) (defendant was ineligible for statutory collateral review because he was sentenced to pay fine without imprisonment or probation; held that defendant was permitted to raise ineffectiveness claim in post-sentence motions). Such circumstances are not present in the case at bar.

the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.[3] Appellant also fails to meet the second **Holmes** exception, because he did not waive his right to PCRA review. Thus, Appellant cannot seek relief on these claims on direct appeal.

Next, Appellant contends that the Commonwealth committed a **Brady** violation by failing to disclose prior to trial that when for the first time at trial, all the parties learned that Mr. Hibble underwent a field sobriety test at the accident scene—the same claim that Appellant raised in his ineffectiveness argument above. Review of the record demonstrates that Appellant failed to raise a **Brady** objection during trial, so he cannot raise this objection on direct appeal. Instead, as discussed above, he must raise this issue in a PCRA petition.

Finally, Appellant objects to his mandatory minimum sentence of 5-10 years' imprisonment for homicide by vehicle while DUI. Appellant asserts that the trial court imposed a mandatory minimum sentence based on his prior acceptance into an accelerated rehabilitative disposition ("ARD") program for DUI. According to Appellant, his entry into ARD was not a criminal conviction, and therefore his mandatory minimum sentence violates **Alleyne v. United States**, 570 U.S. 99 (2013). We disagree.

This Court held in **Commonwealth v. Moroz**, 284 A.3d 227 (Pa. Super. 2022) (*en banc*), that "our legislature statutorily construed ARD as a

_____

[3] We express no opinion concerning the merits of these claims.

conviction for purposes of computing sentences on subsequent convictions." *Id.* at 233. Consequently, *Moroz* held that a statute "which equates ARD to a prior conviction for purposes of imposing a [75 Pa.C.S.A. §] 3804 mandatory minimum sentence, passes constitutional muster." *Id.* Additionally, in *Commonwealth v. Richards*, 284 A.3d 214 (Pa. Super. 2022) (*en banc*), this court held, "[75 Pa.C.S.A. §] 3806(a), which equates prior acceptance of ARD to a prior conviction for purposes of imposing a Section 3804 mandatory minimum sentence, passes constitutional muster." *Id.* at 220. Under these authorities, the trial court properly imposed a mandatory minimum sentence on the ground that Appellant's entry into ARD serves as a prior conviction for sentencing purposes.

We note that in 2023, the Pennsylvania Supreme Court granted allocatur in *Richards* on two issues: (1) whether it is constitutional to consider acceptance of ARD as a prior offense for sentencing purposes, and (2) whether it is fundamentally unfair and a violation of due process to equate ARD with a prior conviction for purposes of a recidivist mandatory minimum sentence. *Richards* remains undecided, so our decisions in *Moroz* and *Richards* remain good law.

We also note that in *Commonwealth v. Verbeck*, 290 A.3d 260 (Pa. 2023), the Supreme Court split 3-3 on the issue of whether acceptance into ARD qualified as a prior conviction for sentencing purposes under *Alleyne* if found by a judge on a preponderance of the evidence rather than by a jury beyond a reasonable doubt. *Verbeck* is not binding precedent because it did

not command a majority of the Court. **Commonwealth v. Minor**, 647 A.2d 229, 231 n.3 (Pa. Super. 1994) (nonmajority decisions of Pennsylvania Supreme Court are not binding on lower courts). Thus, **Verbeck** did not overrule **Moroz** and **Richards**, and these decisions remain binding.

For these reasons, we decline Appellant's request to remand for resentencing on his conviction for homicide by vehicle while DUI.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/19/2025